IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL CASE NO. 3:05cv395

CAROTEK, INC.,

        Plaintiff,

vs.

TEXTRON FASTENING
SYSTEMS, INC.,

        Defendant.

**MEMORANDUM OF DECISION
AND ORDER**

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment[1] [Doc. 31], and the Defendant's Motion for Partial Summary Judgment [Doc. 33].

## FACTUAL AND PROCEDURAL BACKGROUND

This action stems from a subcontract for the provision of a portion of

---

[1] The Document is entitled "Motions Pursuant to (i) Rule 37(c) to Preclude Use of Information and Witnesses not Properly Disclosed and (ii) Rule 56 for Summary Judgment," which, as the title indicates, included a motion related to discovery. That portion of the motion was disposed of by order of Magistrate Judge Keesler on April 16, 2008, [Doc.44], and thus is not addressed herein. Only the Plaintiff's Summary Judgment motion is addressed.

a automated assembly system for aluminum pallets.  The original contract was between BTD Manufacturing, Inc. (BTD) and the Defendant, Textron Fastening Systems, Inc. (Textron) whereby Textron was to design and construct the system.   Textron then subcontracted with the Plaintiff, Carotek, Inc. (Carotek) to provide a significant portion of that system.  After two years of various efforts BTD abandoned the project and declared a default.  On August 20, 2004, BTD brought suit against Textron in state court in Minnesota alleging breach of contract and breach of warranty (hereinafter the Minnesota Action). [Doc. 34-9].   Textron tendered defense of that action to Carotek on August 8, 2005.  Carotek declined that tender and brought this action on August 16, 2005.  Textron subsequently settled the BTD suit by paying the amount fo $405,000 to BTD.

The present action was originally brought in state court, and is before this Court on removal. [Doc.1].  Carotek alleges in its Complaint claims for breach of contract by Textron in the Defendant having failed to pay Carotek the balance due on the contract and for Textron having failed to supply the necessary test and fabrication materials for the completion of the assembly system.  Carotek also alleged a claim pursuant to North Carolina's Unfair and Deceptive Trade Practices statute for Textron having induced Carotek

to continue its attempts to make the assembly system operational while concealing from Carotek the fact that BTD had already accepted the system. Carotek's fourth claim is one for declaratory judgment as to whether Carotek has an obligation to defend Textron in the Minnesota Action. [Doc.1].

Textron has counterclaimed alleging breach of contract and breach of warranty in Carotek's failure to deliver an operational system, and for indemnity for the losses suffered by Textron in defending and settling the Minnesota Action brought by BTD. [Doc.15].

Carotek has moved for summary judgment on all its claims and on all of Textron's counterclaims. Textron has moved for summary judgment as to all of its counterclaims and of Carotek's claims only as to the breach of contract claim.

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), *certiorari denied* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on

4

a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

**BREACH OF CONTRACT AND BREACH OF WARRANTY CLAIMS**

Plaintiff claims that Defendant breached the contract by failing to pay the contract balance and by failing to provide the necessary materials and components. Defendant claims that Plaintiff breached the same contract be failure to provide an operational system. Both contend that they are entitled to judgment as a matter of law and that there are no genuine issues of fact as to such entitlement. These claims fall neatly into three steps that would dictate which party, if either, has breached. Adequate materials and components would need to be provided in order for Carotek to be obligated to provide an operational system; Carotek would need to provide an operational system in order for Textron to be obligated to pay

the contract balance. The Court will, therefore, first examine whether there are any genuine issues as to the provision of the materials and components.

The contract itself provides as follows:

*BTD and/or Textron* will be required to provide the following:

> All riveting equipment pre-wired to modular connectors including the female component of the modular connectors used.
>
> ...
>
> Minimum of 2,500 sets of production quality skid parts in order to set-up and test system. They are required no later than 20 weeks after the project start date.
>
> Ten (10) sets of sample skids are required upon acceptance of this Proposal to complete testing of the bander. Skids required by April 15, 2002.
>
> A representative from BTD with authority to accept machine after successful run-off in Carotek's plant.
>
> ...
>
> Detailed design prints, fully toleranced, of skid components and skid assembly by no later than April 15, 2002.

[Doc. 34-6 at 13] (emphasis provided). The parties do not dispute that the language "quality skid parts" refers to the aluminum pieces that were to be the materials intended to be fed through the assembly system when it was operational. [Doc. 34 at 6; Doc. 36 at 1-2]. Nor do the parties dispute that

6

the contract at issue was entered into between Carotek and Textron. BTD was not a party to the contract.

Despite the language of the contract, Textron argues that BTD alone was responsible for providing the aluminum pieces to be used in the skids. Textron cites deposition testimony from Carotek employees as showing that BTD supplied the defective aluminum pieces, not Textron. [*e.g.*, Docs. 34-7, 34-12, and 34-13]. The issue of which entity *supplied* the product, however, is distinct from the issue of who was legally *responsible* for providing the product that was alleged to be defective.

For example, Kenneth Grimes, a Carotek employee, testified that the "proposal and this contract was based on BTD providing Carotek with aluminum product which was conveyed down this assembly line to the Textron riveting heads and then of course a finished pallet coming out the other end[.]" [Doc. 34-7 at 4]. Though neither Grimes' testimony nor Textron's brief are clear on this point, Textron apparently argues that the reasonable inference of Grimes' testimony is that there was a separate or subsequent agreement between Carotek and BTD regarding the provision of the aluminum pieces. Any such agreement, however, would not modify the language of the contract at issue herein which obligated Textron to

supply the product. Nor does Textron cite any case law for the proposition that a separate contract with BTD for the provision of materials relieves Textron of its contractual duty to Carotek to provide those materials. *See, e.g.*, Lindstrom v. Chesnutt, 15 N.C.App. 15, 24, 189 S.E.2d 749 (1972), *certiorari denied* 281 N.C. 757, 191 S.E.2d 361 (1972) ("'The plaintiff has elected to pursue his action against the contractor with whom he contracted in order to recover damages for an alleged breach of that contract, and plaintiff should be permitted to do so without having contested litigation between the contractor and his subcontractor projected into the plaintiff's lawsuit.'"), *citing* Montgomery v. Blades, 217 N.C. 654, 9 S.E.2d 397 (1940). "[W]hen parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts[.]" Bloomfield Estates Improvement Ass'n, Inc. v. Birmingham, 479 Mich. 206, 213, 737 N.W.2d 670 (2007) (citations omitted);[2] Corbin v. Langdon, 23 N.C.App. 21, 25, 208 S.E.2d 251, 254

---

[2] The contract between Carotek and Textron contains a choice of law provision in favor of the law of Michigan. [Doc. 15-2 at 14]. Carotek argues against the enforcement of that clause. It is unnecessary for the Court to address the choice of law issue at this time since the substantive law of Michigan does not appear to differ in any significant respect from that of North Carolina.

(1974) (when the language of a contract is clear and unambiguous, the court must interpret the contract as written and "cannot, under the guise of construction, reject what parties inserted or insert what parties elected to omit."). The language of this contract placed on Textron the obligation to provide the aluminum pieces to Carotek. The fact that the parties may have contemplated that Textron would be supplied those pieces by BTD did not relieve Textron of its contractual duty to perform.

Textron has presented a forecast of evidence that concedes that the materials provided were defective, particularly that the aluminum pieces were distorted and "deformed" and otherwise out of specification. [Doc. 34-7 at 4-5]. This, however, does not end the inquiry. There remains the issue of whether the failure of Textron to have adequate materials provided to Carotek was a *material* breach. "[W]hether the alleged breach was material is an issue of fact that should be determined by the jury." Crosby v. Bowers, 87 N.C. App. 338, 345, 361 S.E.2d 97, 102 (1987). On the forecasts of evidence presented a reasonable jury could determine that the provision of the aluminum pieces was such an immaterial element of the contract that Textron's failure to have assured their delivery did not excuse the performance by Carotek or excuse Carotek from having to obtain the

pieces from another source in order to complete the project. On the other hand, from this forecast of evidence a reasonable jury could determine that the breach admitted by Textron was material. Therefore, summary judgment as to this issue must be denied.

The other issues before the Court flow from the first. "The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." Coleman v. Shirlen, 52 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981) (citing 6 Williston, Contracts §864 at 290 (3d ed, 1962)). If the jury determines that Textron's breach was material, it would follow that Carotek was relieved of its obligation to provide a system that complied with the warranty. Conversely, if the jury determines that Textron's admitted breach was immaterial then there would be an issue as to whether Carotek provided a system that complied with the warranty and the specifications. Since these answers are dependent upon a threshold determination by the finder of fact, summary judgment is inappropriate as to any of the issues regarding the alleged breaches of the contract by both the Plaintiff and the Defendant.

## DEFENSE AND INDEMNITY CLAIMS

In arguing that it is entitled to defense and indemnity from Carotek, Textron asserts that this case

> is controlled by well-established principles of law applicable to contractual indemnity. If (1) an enforceable contract of indemnity exists, (2) a seasonable tender of defense is made with notice that a settlement will be entered, and (3) the tender of defense is refused, an indemnitee need only show potential liability to recover on a contract of indemnity.

[Doc. 34 at 9-10, citing <u>Grand Trunk W. R.R. v. Auto Warehousing Co.</u>, 686 N.W.2d 756, 763, 262 Mich. App. 345, 354 (2004**)**].

Textron then proceeds to argue that

> Potential liability means nothing more than that the indemnitee acted *reasonably* in settling the underlying suit. The *reasonableness* of the settlement consists of two components, which are interrelated. The *fact finder* must look at the amount paid in the settlement of the claim in light of the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed.

[<u>Id</u>. at 15, again citing <u>Grand Trunk W.</u>, 686 N.W.2d at 764, 262 Mich. App. at 355 (emphasis added)].

In admitting that there is a role for the *fact finder* to play in this determination, Textron has conceded that there is an *issue of fact*. Likewise, as issue of reasonableness is one for the jury. In its Motion for

Summary Judgment Textron asks the Court to weigh these elements in the place of the finder of fact.  There is no basis on the forecasts of evidence presented to take this issue away from the jury.  Moreover, there is an issue of the "seasonableness" or reasonableness of notice that Textron provided to Carotek to exercise any right it may have had to require Carotek to defend the Minnesota Action.  That action was filed August 20, 2004, [Doc. 34-9], but Textron has presented no evidence of any notice to Carotek or demand that Carotek defend that action until the letter of August 8, 2005. [Doc. 15-3].  That demand makes clear that in the intervening year substantial discovery had been completed in the Minnesota Action, presumably without Carotek having been given the opportunity to participate and defend either its interests or Textron's. [Doc. 15-2].  Whether such notice is "seasonable" is clearly a jury issue.  For these reasons the motions for summary judgment as to the defense and indemnity issues will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion[] Pursuant to Rule 56 for Summary Judgment [Doc. 31] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Partial

Summary Judgment [Doc. 33] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the parties having failed to resolve this case in mediation and all deadlines having passed, this matter shall be calendared for trial in the February 2009 mixed term.

Signed: October 9, 2008

Martin Reidinger
United States District Judge